# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

NATHANIEL J. TAYLOR and HARRY L. HARRISON, individually and on behalf of all others similarly situated ,

Plaintiffs,

v.

ALLIEDBARTON SECURITY SERVICES LP; and DOES 1-10, inclusive,
Defendants.

_____/

Case No.  1:13-cv-01613-AWI-SKO

**ORDER GRANTING DEFENDANT'S MOTION TO STAY STATE LAW CLAIMS AND DENYING MOTION TO STAY FLSA CLAIM**

(Doc. No. 15)

## I.   INTRODUCTION

On October 7, 2013, Plaintiffs Nathaniel Taylor ("Taylor") and Harry Harrison ("Harrison") (collectively, "Plaintiffs") filed a putative class action and collective action complaint in this Court.  Plaintiffs filed a First Amended Complaint ("FAC") on November 26, 2013. (Doc. 7.)  Plaintiffs' FAC sets forth seven (7) causes of action: (1) failure to pay minimum wages and/or overtime wages under California Labor Code ("CLC") §§ 510 and 1194;  (2) failure to provide employees with accurate information on pay stubs under CLC §226; (3) failure to provide rest breaks under CLC §§ 226.7 and 512 and the California Industrial Welfare Commission's ("IWC") Wage Order 4 ("Wage Order 4"); (4) failure to provide meal breaks under CLC §§ 226.7 and 512 and Wage Order 4; (5) failure to pay minimum wages and/or overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b); (6) violation of California's  Unfair Competition

Law ("UCL"), California Business and Professions Code § 17200 *et seq.*; and (7) civil penalties under CLC § 2698 *et seq.*, the Private Attorney Generals Act ("PAGA").[1]

On February 10, 2014, AlliedBarton Security Services LP ("AlliedBarton") filed a Motion to Stay and set a hearing for March 19, 2014.  (Doc. 12.)  On March 5, 2014, AlliedBarton withdrew its Motion to Stay, refiled it, and renoticed a hearing on the motion for April 2, 2014. (Doc. 15.)  Plaintiffs filed an Opposition to AlliedBarton's Motion to Stay on March 19, 2014. (Doc. 17.)  Plaintiffs request that this Court deny the Motion to Stay, or, if granted, that it also toll the FLSA statute of limitations for (1) the stay's duration, and (2) the two-week period between the first scheduled hearing on the Motion to Stay and the rescheduled hearing.   AlliedBarton submitted its Reply to Plaintiffs' Opposition on March 26, 2014.  (Doc. 20.)

On March 31, 2014, having reviewed the parties' briefs and all supporting documentation, the Court determined that this matter was suitable for decision without oral argument pursuant to U.S. District Court for the Eastern District of California's Local Rule 230(g); thus, the hearing set for April 2, 2014, was vacated.

For the reasons set forth below, the Motion to Stay is GRANTED as to the six state-law claims and DENIED as to the FLSA claim.

## II.  BACKGROUND[2]

**A.    This Action -- *Taylor v. AlliedBarton Security Services LP*, Case No. 1:13-cv-01613-AWI-SKO**

AlliedBarton is a security officer services company based in Delaware with over 55,000 employees nationwide.  (Doc. 7, ¶ 8.)  Its employees provide security services at shopping centers and malls.  Beginning on October 1, 2011, AlliedBarton began providing security services for a number of shopping centers owned by the Macerich corporation and/or Macerich's parent company, TMC.  (Doc. 7, ¶ 14.)  At that time, security personnel at the Vintage Faire Mall in

---

[1] The FAC skips from the Sixth Claim for Relief to the Eighth Claim for Relief (the Eighth Claim refers to the PAGA claim). (Doc. 7, pp. 27-8.)  Therefore, the "eighth claim" in the FAC is referred to as the seventh claim or "claim 7" throughout this Order.

[2]  The background section is intended to provide a context for the Court's decision and is not intended to have any dispositive effect.

1  Modesto, California, who had previously been employed by Macerich, became employed by

2  AlliedBarton.  (Doc. 7, ¶ 14.)

3      Plaintiff Taylor began working for AlliedBarton as a non-exempt, hourly security

4  supervisor on October 1, 2011, and is a current employee of AlliedBarton.  Plaintiff Harrison

5  began working for AlliedBarton as a non-exempt, hourly security supervisor on October 1, 2011,

6  and worked in that capacity until approximately April 1, 2012, at which time Harrison began

7  working the graveyard shift as a security guard, rather than working as a supervisor.  He remains a

8  non-exempt, hourly employee of AlliedBarton.

9      Plaintiffs' complaint stems from various personnel practices and policies of AlliedBarton.

10  According to the FAC, AlliedBarton required its security guards to wear uniforms provided by the

11  company.  (Doc. 7, ¶ 17.)  AlliedBarton also required that the uniforms stay on the work premises,

12  and AlliedBarton provided lockers and a changing room for the guards. The guards' uniforms

13  consisted of a shirt, pants, a duty belt, handcuffs, a flashlight, pepper spray, and a radio.  Plaintiffs

14  state they were required to arrive approximately fifteen minutes prior to their shift to change into

15  their uniforms, and to don and fill their duty belts with the required components.  Similarly, at the

16  end of each shift, they and other security officers spent time changing from their uniforms into

17  street clothes.  This time spent donning and doffing their required work uniforms, approximately

18  30 minutes per shift, was uncompensated.  In addition, Plaintiffs were not compensated for time

19  walking from the locker rooms to the clock-in and clock-out area, which Plaintiffs estimate

20  required an additional 10 minutes per shift.  Starting in April 2013, security officers were allowed

21  to take their pants and shirts home, but they were still required to arrive approximately 10 minutes

22  before their shift and remain 10 minutes after clocking out to doff a duty belt and place its contents

23  in the locker rooms.  (Doc. 7, ¶ 18.)  Security supervisors, such as Plaintiffs, were also required to

24  spend another 30 to 45 minutes per shift filling out and editing reports and emailing, which was

25  uncompensated pursuant to AlliedBarton's policy.  (Doc. 7, ¶ 19.)

26      Additionally, Plaintiffs claim that AlliedBarton failed to provide security guards with

27  proper rest breaks and a thirty-minute, uninterrupted meal period as required by California law.

28  Security guards remained on-call and carried handheld radios during lunches and breaks, and were

3

1   required to respond to any security needs that arose during such rest and meal breaks.  (Doc. 7, ¶

2   20.)  However, guards were required to clock out during their meal periods.  AlliedBarton required

3   its employees to execute meal waivers in light of its blanket policy that all security guards were to

4   remain on call during meal breaks.  (Doc. 7, ¶ 22.)

5          Finally, Plaintiffs claim that the break room, the men's room, and the clock-in and clock-

6   out area suffered a rat infestation.  Plaintiff Taylor reported the situation, which AlliedBarton

7   failed to remedy.  (Doc. 7, ¶ 24.)

8          Plaintiffs worked for Macerich before AlliedBarton undertook security services for

9   Vintage Faire Mall. (Doc. 7, ¶¶ 10-11.)   In a class action case against Macerich entitled *Adan*

10  *Bernardino Peralta v. Macerich Management Company*, Case Number 1004656 ("*Adan*"), the

11  Marin County Superior Court entered an Order, Judgment, and a Decree Granting Final Approval

12  of a Class-Action Settlement and Awarding Attorneys' Fees and Costs against Macerich on

13  December 11, 2011.  Macerich is not a defendant in this matter.[3]

14  **B.     Similar Actions**

15          **1.     *Babeshkov v. AlliedBarton Security Services*, No. BC388257 (Los Angeles
16                 Superior Court, filed April 1, 2008)**

17          On April 1, 2008, Plaintiff Mikhail Babeshkov filed a class action suit against

18  AlliedBarton in Los Angeles County Superior Court (*Babeshkov v. AlliedBarton Security Services*,

19  Case No. BC388257 ("*Babeshkov*").   Babeshkov alleged claims on behalf of himself and a

20  putative class of all other security officers (and any other non-exempt employees) employed by

21  AlliedBarton in California from 2004 to the date of filing of the lawsuit: (1) failure to pay wages

22  pursuant to the CLC; (2) failure to provide rest periods and meal periods pursuant to the CLC; (3)

23  failure to timely pay wages pursuant to the CLC; and (4) restitution and injunctive relief pursuant

24  to the UCL of California Business and Professions Code § 1700 *et seq*.[4]  (Doc 15-3, Ex. D at ¶¶

25  40-68.)

26  _____
    [3] It is not clear from the briefings if Plaintiffs were part of the class in the *Adan* action.

27  [4] Plaintiffs argue that *Babeshkov* lacks standing to seek injunctive relief under UCL because plaintiff is no longer
28  employed by AlliedBarton and cannot demonstrate real or immediate threat of an irreparable injury.  (Doc. 17, pp. 3-
    4.)

At the time Babeshkov filed his complaint, AlliedBarton was defending another putative class action ("the *Popek* Action") that had been filed in 2006 in San Francisco County Superior Court and which contained the same claims on behalf of the same putative class. As a result, in July 2008, the court stayed the *Babeshkov* action pending disposition of the putative class claims in the *Popek* Action. (Doc. 15-1, p. 4.)

On June 3, 2011, the court in the *Popek* Action denied the plaintiffs' motion for class certification. The *Babeshkov* court thereafter lifted the stay of that action. (Doc. 15-2, p. 2.) Following the lifting of the stay in *Babeshkov*, the parties have engaged in discovery and case management conferences, and a privacy notice has been sent to the putative class members. *Id*. According to AlliedBarton, the *Babeshkov* court indicated it will set the briefing schedule for the plaintiffs' motion for class certification at the next status conference. (Doc. 22, p. 3.)

**2.   *Dynabursky v. AlliedBarton Security Services*, No. 8:12-cv-2210-JLS (Central District of California, filed December 21, 2012) ("*Dynabursky*")**

On December 21, 2012, Plaintiff Gregory Dynabursky ("Dynabursky") filed a putative class action against AlliedBarton in the U.S. District Court for the Central District of California, alleging that AlliedBarton failed to provide Dynaburksy and similarly situated hourly security officers with proper duty-free meal and rest breaks. (Doc. 15-3, Ex. B. ¶¶ 3, 7, 33, 38, 40.) Dynabursky sought to represent a class of all AlliedBarton's security officers employed in California at any time from December 21, 2008, to the filing date. (*Id*. at ¶ 16.) Dynabusrky alleged claims for (1) failure to provide duty-free meal breaks; (2) failure to provide duty-free rest breaks; (3) failure to provide accurate wage statements; and (4) a UCL claim—all stemming from the same meal and rest break allegations.

On January 29, 2014, the court granted Dynabursky's motion for certification of the following classes: (1) all of AlliedBarton's past and present California employees who worked more than 6 hours in any on-duty meal break work shift as a security officer from December 21, 2008, to the present; (2) all of AlliedBarton's past and present California employees who worked more than 6 hours in any on-duty meal break work shift as a security officer from December 21, 2008, to the present who received itemized wage statements; (3) all of AlliedBarton's past and

1    present California employees who worked more than 3.5 hours in any work shift as a security

2    officer from December 21, 2008, to the present; and (4) all of AlliedBarton's past and present

3    California employees who worked more than 3.5 hours in any work shift as a security officer from

4    December 21, 2008, to the present who received itemized wage statements.  (Doc. 15-3, Ex. C.)

5         **3.    *Navarro v. AlliedBarton Security Services*, No. 683341 (Stanislaus County**
6              **Superior Court, filed March 26, 2013) ("*Navarro*")**

7              On February 27, 2013, Plaintiff Erik Navarro ("Navarro") filed a putative class action against

8    AlliedBarton in California state court, followed by a First Amended Complaint in March 2013.

9    Navarro alleged that AlliedBarton failed to pay Navarro and similarly situated security officers for

10   time spent donning and doffing uniforms and duty equipment and for related off-the-clock work.

11   (Doc. 15-3, Ex. A ¶¶ 18-19.)  Navarro's claims include (1) failure to pay wages  under CLC §§

12   510, 1194(a), 1174, and 1197; (2) failure to provide accurate wage statements under CLC § 226;

13   (3) failure to timely pay wages under CLC §§ 201-204; (4) a UCL claim under California

14   Business and Professions Code §17200 *et seq.*; and (5) a PAGA claim.  (Doc. 15-3, Ex. A pp. 6-

15   17.)  Navarro filed suit on behalf of all individuals employed by AlliedBarton in hourly security

16   officer positions in California at any time since February 2009. (*Id*. at ¶ 13.)

17              According to AlliedBarton, on January 29, 2014, the parties mediated *Navarro* and reached

18   a settlement of all claims in the action on behalf of an agreed subclass of individuals employed by

19   AlliedBarton in hourly security positions at any Macerich site in California at any time from

20   February 2009 to January 29, 2014. (Doc. 15-2, p. 2.)  The parties are reportedly in the process of

21   seeking court approval of the settlement. (*Id*.)  Plaintiffs Taylor and Harrison are both class

22   members in the *Navarro* case.  (Doc. 20, p. 7.)

23                        **III.    THE PARTIES' ARGUMENTS**

24   **A.    Allied Barton's Motion to Stay**

25              AlliedBarton moved to stay the present action under the federal first-to-file rule and the

26   *Colorado River* doctrine, as well as under the Court's inherent discretionary power to stay

27

28

1    proceedings in the interests of judicial economy.[5]   AlliedBarton asserts that earlier-filed

2    duplicative litigation involving the same or substantially same claims on behalf of the same, or

3    substantially, putative classes is pending in the *Babeshkov*, *Dynaburksy*, and *Navarro* actions.

4    (Doc. 15-1, p. 1.)

5    **B.      Plaintiffs' Opposition to Defendant's Motion to Stay**

6            Plaintiffs oppose AlliedBarton's Motion to Stay, arguing that although there are three

7    actions currently pending against AlliedBarton for violations of California's wage-and-hour law,

8    none of those actions include a claim under the FLSA for AlliedBarton's alleged failure to pay

9    minimum wage and overtime.  Plaintiffs' opposition underscores that, while the members of the

10   other classes are limited to California, this action is brought on behalf of a nationwide class by

11   virtue of the FLSA claim.  Plaintiffs assert that staying this action will therefore damage not only

12   Plaintiffs, but those non-California members of the putative FLSA collective who are uninvolved

13   with any of the pending California-specific lawsuits.  Moreover, Plaintiffs argue that, because this

14   action is the only one brought by *current* employees, this is the only action in which injunctive

15   relief is possible.  Finally, Plaintiffs argue that AlliedBarton fails to establish that it will suffer any

16   damage or inequity if required to defend this suit, which is required to apply judicial discretion to

17   stay a case.  (Doc. 17, p. 1.)

18   **C.      AlliedBarton's Reply to Plaintiffs' Opposition to its Motion to Stay**

19           AlliedBarton contends Plaintiffs' primary challenge to its motion to stay is that Plaintiffs in

20   this case allege a nationwide FLSA collective action claim, whereas the *Navarro, Dynabursky,* and

21   *Babeshkov* actions only allege California state law claims.  AlliedBarton contends a stay is not

22   improper simply because *Navarro*, *Dynabursky*, and *Babeshkov* will not resolve the FLSA claim

23   in this case.  AlliedBarton notes that courts in the Ninth Circuit have held that partial stays are

24   _____

25   [5] The federal "first to file rule" is a doctrine permitting a district court to decline jurisdiction over an action when a
     complaint involving the same parties and issues has already been filed in another district.  *Pacesetter Systems, Inc. v.*

26   *Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982).   The *Colorado River* doctrine outlines the circumstance in which a
     court may stay or dismiss a concurrent federal suit due to a state proceeding for reasons of wise judicial

27   administration.  *See*, *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 818 (1976).  Both
     doctrines are analyzed below in this Order.

28

                                                                7

1  appropriate under both the first-to-file doctrine and the *Colorado River* doctrine, and that to the

2  extent the duplicative litigation involves the same claims, those claims should be stayed.[6]

3       AlliedBarton argues that a partial stay is appropriate in this case as to all of Plaintiffs' state

4  law claims, because the state law claims are duplicative of the meal and rest break claims (and

5  derivative claims) in the *Dynabursky* and *Babeshkov* actions, and of the minimum wage and

6  overtime claims (and derivative claims) in the *Navarro* action.  Further, AlliedBarton argues it

7  would be wasteful of judicial and party resources to litigate these claims in multiple forums, and

8  raises the possibility of conflicting rulings and overlapping notices to putative class members,

9  which could cause confusion.  AlliedBarton states that, at minimum, a partial stay as to Plaintiffs'

10  state law claims is appropriate.  AlliedBarton asserts Plaintiffs' FLSA claim should similarly be

11  stayed, at least temporarily, pending approval of the settlement in the *Navarro* action, which

12  contemplates certification of a class for settlement purposes that includes both named Plaintiffs in

13  this case.  AlliedBarton argues that until determination of the approval proceedings in *Navarro*, it

14  is unclear the degree to which the settlement might impact the FLSA claim in this case.

15                                    **III.   DISCUSSION**

16  **A.      The Parties' Requests for Judicial Notice are GRANTED**

17           **1.      AlliedBarton's Requests for Judicial Notice**

18       AlliedBarton filed a Request for Judicial Notice of six (6) documents from other

19  proceedings:

20           (1)      Exhibit A:  the First Amended Complaint filed in *Navarro* on March 26,

21                    2013;

22           (2)      Exhibit B:  the Complaint in *Dynabursky v. AlliedBarton Security Services*, filed

23                    on December 21, 2012;

---

[6] Courts in the Ninth Circuit have stayed parts of proceedings under the federal first-to-file doctrine. *See, e.g.,*
*Weinstein v. Metlfe Inc.,* 2006 WL 3201045 (N.D. Cal. 2006) (staying one cause of action for failure to pay wages that
was duplicative of similar cause of action in earlier filed action). Courts in the Ninth Circuit have also held that a
partial stay of proceedings is authorized under the *Colorado River* doctrine. *See* 20 *Daugherty v. Oppenheimer & Co.,*
2007 WL 1994187, *6 (N.D. Cal. 2007) (granting stay of state law wage claims that were duplicative of claims set
forth in earlier filed state court action, while denying motion to stay FLSA claims).

28

(3)     Exhibit C: the Order Granting Plaintiff's Motion for Class Certification in
        *Dynabursky* issued on January 29, 2014;

(4)     Exhibit D:  the complaint in *Babeshkov* filed on April 1, 2008;

(5)     Exhibit E:  the complaint in *Janata v. AlliedBarton*, Case No. 37-2013-
        00030693, filed in San Diego County Superior Court on January 17, 2013; and

(6)     Exhibit F: the order Granting a Motion to Stay issued in *Janata v. AlliedBarton*
        on July 12, 2013.  (Doc. 15-3).

Plaintiffs have not opposed AlliedBarton's requests for judicial notice.

AlliedBarton also filed a Supplemental Request for Judicial Notice of Exhibit G which consists of its Memorandum of Points and Authorities supporting its Motion for Reconsideration of the court's order granting Dynabursky's Motion for Class Certification in the *Dynabursky* action.  (Doc. 22.)

Federal Rule of Evidence 201 provides that a "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(1)-(2).  Judicially noticed facts often consist of matters of public record, such as prior court proceedings.  *See, e.g., Emrich v. Touche Ross & Co.*, 846 F. 2d 1190, 1198 (9th Cir. 1988) (administrative materials); *Barron v. Reich*, 13 F. 3d 1370, 1377 (9th Cir. 1994) (city ordinances); *Toney v. Burris*, 829 F. 2d 622, 626-27 (7th Cir. 1987) (geological surveys and existing land use maps); and *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of a filed complaint as a public record).

Exhibits A through G have been filed with or issued by a court and are matters of public record.  "The existence and authenticity of a document which is a matter of public record is judicially noticeable such as the authenticity and existence of a particular order, pleading, public proceeding, or census report, which are matters of public record, but the veracity and validity of their contents (the underlying arguments made by the parties, disputed facts, and conclusions of fact) are not."  *Cactus Corner, LLC v. U.S. Dep't of Ag.*, 346 F. Supp. 2d 1075, 1099 (E.D. Cal. 2004) (citing *Lee v. City of L.A.*, 250 F.3d 668, 690 (9th Cir. 2001)); *see also Del Puerto Water*

9

*Dist. v. U.S. Bureau of Reclamation*, 271 F. Supp. 2d 1224, 1234 (E.D. Cal. 2003) ("Judicial notice is taken of the existence and authenticity of the public and quasi public documents listed. To the extent their contents are in dispute, such matters of controversy are not appropriate subjects for judicial notice.").  While it is not appropriate to take judicial notice of the facts contained in these documents, the existence and authenticity of these documents may be judicially noticed.  To that extent, AlliedBarton's requests for judicial notice are GRANTED.

### 2.   Plaintiffs' Request for Judicial Notice

Plaintiffs Taylor and Harrison also filed a Request for Judicial Notice of the Order Denying Motion to Stay entered by the Central District of California in the *Dynabursky* case on March 27, 2013.  AlliedBarton has not opposed Plaintiffs' request for judicial notice.  For the reasons stated above, Plaintiffs' request for judicial notice is GRANTED.

## B.   The Federal First-to-File Rule Weighs in Favor of Imposing a Stay of Four of Plaintiffs' State Law Claims.

The federal "first to file rule" is a doctrine permitting a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district.  *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982).  A court evaluates three threshold factors in applying the first-to-file rule: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of all the issues.  *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625-26 (9th Cir. 1991).  If an action meets these requirements, the court then has discretion to transfer, stay, or dismiss the action.  *Id.* at 622.  However, the district court retains the discretion to disregard the first-to-file rule in the interest of equity. *Id.*

"The most basic aspect of the first-to-file rule is that it is discretionary; 'an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts.'" *Id.* at 628 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183-84 (1952)).  While the first-to-file rule is discretionary, it "serves the purpose of promoting efficiency well and should not be disregarded lightly."  *Church of Scientology of Cal. v. U.S. Dep't. of Army*, 611 F.2d 738, 750 (9th Cir. 1979).

1

2

3

### 1. Chronology of the Actions

This action commenced in October 2013.[7]  AlliedBarton correctly notes that *Dynabursky* was filed in the Central District of California in 2012 prior to this case.[8]  Accordingly, the chronology of the actions factor is met and weighs in favor of applying the federal first-to-file rule to the extent the cases' claims overlap.

### 2. Similarity of the Parties

The first-to-file rule does not require strict identity of the parties, but rather substantial similarity.  *Adoma*, 711 F.Supp.2d at 1147 (citing *Inherent.com v. Martindale–Hubbell,* 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006)).   In a collective action, the class members, and not the class representatives, are compared.  *Ross v. U.S. Bank Nat. Ass'n,* 542 F. Supp. 2d 1014, 1020 (N.D. Cal 2008) (citing Cal. Jur.3d Actions § 284).

Here, AlliedBarton is also the named defendant in *Dynabursky*.  Additionally, the proposed class for *Dynaburksy*'s claims for failure to provide meal breaks and rest breaks (both under CLC §§ 226.7 and 512 and the applicable IWC wage order[9]), failure to provide accurate wage

---

[7] FLSA collective action cases under Section 216(b) differ from class actions as defined by Rule 23 of the Federal Rules of Civil Procedure. A FLSA action under 216(b) is only a collective action if other plaintiffs affirmatively opt-in through written and filed consent. *Smith v. T–Mobile USA Inc.,* 570 F.3d 1119, 1121–22 (9th Cir.2009). A collective action under the FLSA is considered commenced in the case of any individual claimant

> on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or [ ] if such written consent was not so filed or if his name did not so appear—on the subsequent date on which such written consent is filed in the court in which the action was commenced.

29 U.S.C. § 256(a)-(b). This provision, however, applies only to the statute of limitations. *See Drabkin v. Gibbs & Hill,* 74 F.Supp. 758, 762 (S.D.N.Y.1947) ("[T]he requirement for the filing of the 'written consent to become a party plaintiff' is for the specific purpose of determining the applicability of the statute of limitations." An FLSA action "commences" when the complaint is filed with the court); *see also* Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court").

[8] The federal first-to-file rule applies to previously filed *federal* claims, and *Dynabursky* is the only federal case of the three prior cases.

[9] No specific wage order is specified in the *Dynabursky* complaint; it instead references "the applicable wage order" throughout.

statements (under CLC § 226), and UCL claim (under California Business and Professions Code § 17200, *et seq*.) is substantially similar to the putative class in this case because both seek to represent at least some of the same individuals who worked for AlliedBarton in a security function in California. The class in *Dynabursky* includes employees from December 21, 2008, through December 21, 2012, while the class in this action includes employees from September 13, 2009 until the filing date for motion certification, which would include significant duplication in class members.

However, only this action seeks to certify a collective action under the FLSA, which, unlike the classes in each of the other suits, is not limited to AlliedBarton employees in California. Staying the FLSA claim would potentially affect members of the putative FLSA class who are not involved in any of the California lawsuits.  Plaintiffs argue that the FLSA collective action is unique to all these cases in that it is a "*nationwide* class by virtue of the FLSA claim."  (Doc. 17, p. 1.)  Indeed, the putative FLSA class is the only class which, among all the cases, is not specifically limited to those persons working for AlliedBarton in California.

Accordingly, the second prerequisite of the first-to-file rule is met regarding the common state law claims, but not as it pertains to the FLSA claim.

### 3.     Similarity of the Claims

For the first-to-file rule to apply, the issues in two actions need not be identical. *Inherent.com,* 420 F. Supp. 2d at 1097.  Rather, the issues need only be "substantially similar." *Id.*

The *Dynabursky* action brings claims against AlliedBarton for (1) failure to provide proper meal breaks and rest breaks pursuant under CLC §§ 226.7 and 512 and the applicable IWC wage order; (2) failure to provide accurate wage statements under CLC § 226; and (3) restitution and injunctive relief under the UCL of California Business and Professions Code § 17200, *et seq*.  The second and third claims are derivative of the claims for failure to provide proper meal breaks and rest breaks.  (Doc. 15-3, Ex. B at ¶¶ 30-43.)

Here, Plaintiffs' second claim for failure to provide accurate wage statements is substantially similar to the claim brought in *Dynabursky*; both claim that AlliedBarton failed to

keep accurate records as legally required, including employees' correct gross wages and net wages earned.  (Doc. 7, ¶ 67; Doc. 15-3, Ex. B ¶ 46.)

Plaintiffs' third and fourth claims for inadequate rest and meal breaks are also substantially similar to claims in *Dynabursky*; both claims allege AlliedBarton required employees to work through rest and meal breaks.[10]

Plaintiffs' sixth claim (UCL) is substantially similar to *Dynabursky*'s UCL claim, and alleges that AlliedBarton engaged in unfair business practices as defined by the California Business and Professions Code § 17200 *et seq.* by failing to pay all required compensation to its employees.  (Doc. 7, ¶ 81; Doc. 15-3, ¶ 50.)

Because of the overlap, this factor weighs in favor of applying the first-to-file doctrine and staying the litigation with respect to Plaintiffs' second, third, fourth, and sixth claims.  The ultimate issues to be determined on the meal and rest break, accurate wage statement, and UCL claims in both these actions relate to whether AlliedBarton required security officers to miss legally required meal and rest breaks without compensation.  Plaintiffs' second, third, fourth, and sixth claims here are substantially similar to claims alleged in *Dynabursky*.  The rule does not, however, warrant a stay of the wage and hour claims, PAGA claim, and FLSA claim, as they have not been brought before another federal court.  *See, Pacesetter Systems, Inc.*, 678 F.2d at 95 (The first to file rule applies to prior filed federal actions.).

### 4.    Conclusion

The federal first-to-file rule elements are met, and the rule applies to Plaintiffs' claims for inadequate meal and rest breaks, failure to provide accurate wage statements, and the UCL claim (claims 2, 3, 4, and 6).  Plaintiffs' claims under wage and hour law, FLSA, and the PAGA claim (claims 1, 5, and 7), however, are not raised in the prior federal action (i.e., *Dynabursky*), and the first-to-file rule does not apply to those claims.

---

[10]   The *Dynabursky* complaint does not specifically mention AlliedBarton requiring employees to remain on call through breaks and meals, as Plaintiffs do in this action (Doc. 7, ¶ 20.)  The *Dynabursky* complaint states, "Defendants regularly required employees to work through their meal [and rest] periods without proper compensation and denied Plaintiff and their employees the right to take proper meal periods as required by law." (Doc. 15-3, Ex. B ¶¶ 33, 40.), and, "[C]lass members were suffered and permitted to work through legally required meal breaks and were denied the opportunity to take their off-duty meal breaks." *Id.* at ¶ 31.

1

2

3    **C.      The *Colorado River* Doctrine Favors a Stay of All of the State Law Claims**

4         Federal courts possess a "virtually unflagging obligation . . . to exercise the jurisdiction

5    given them" in non-discretionary actions for damages. *R.R. Street & Co. Inc. v. Transport Ins.*

6    *Co.*, 656 F.3d 966, 977 (9th Cir. 2011) (citing *Colorado River Water Conservation Dist. v. United*

7    *States,* 424 U.S. 800, 817 (1976)) ("*Colorado River*").   In "exceptional circumstances," a court

8    may stay or dismiss a concurrent federal suit due to a state proceeding for reasons of wise judicial

9    administration. *Colorado River*, 424 U.S. at 818.  "[T]he pendency of an action in [a] state court is

10   no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Sprint*

11   *Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013) (quoting *McClellan v. Carland,* 217 U.S.

12   268, 282 (1910)).  Any doubt as to whether a factor exists should be resolved against a stay, not in

13   favor of one, and "[o]nly the clearest of justifications will warrant dismissal." *Travelers Indem.*

14   *Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990) (citing *Colorado River,* 424 U.S. at 819).

15        In deciding whether to grant a motion to stay or dismiss, a district court considers its

16   obligation to exercise its jurisdiction as well as a combination of factors counseling against doing

17   so. *R.R. Street & Co. Inc.*, 656 F.3d at 978.  "[S]ome factors may weigh for or against the exercise

18   of jurisdiction while others primarily serve as a bar to stay or dismissal." *Id*. at 979.  A court's

19   decision to stay a federal action on grounds of wise judicial administration "does not rest on a

20   mechanical checklist, but on a careful balancing of the important factors . . . relevant to the

21   decision as they apply in a given case, with the balance heavily weighted in favor of the exercise

22   of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Const.*, 460 U.S. 1, 2 (1983).

23        The Ninth Circuit recognizes eight factors in assessing whether a *Colorado River* stay or

24   dismissal is appropriate: (1) which court first assumed jurisdiction over any property at stake;

25   (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the

26   order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the

27   rule of decision on the merits; (6) whether the state court proceedings can adequately protect the

28   rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state

1  court proceedings will resolve all issues before the federal court.[11]  *R.R. St. & Co. Inc.*, 656 F.3d at

2  978-79.[12]  The Court thus turns to a consideration of these factors.

3  **1.    Which Court First Assumed Jurisdiction Over Property at Stake**

4  This factor is irrelevant where the dispute does not involve property.  *See id.* at 979 ("The

5  first two factors in *Holder* are irrelevant in this case because the dispute does not involve a

6  specific piece of property . . . ").  Here, the parties' dispute is over employment practices, not

7  property.  Accordingly, factor one is irrelevant in this matter.

8  **2.    Inconvenience of the Federal Forum**

9  Neither party argues that the federal forum is inconvenient.  Plaintiffs' claims arose within

10  the Eastern District of California.  The distance from this Court to Vintage Faire Mall is just less

11  than 100 miles, and Plaintiffs worked and were employed by AlliedBarton and worked at the mall

12  in Modesto, California.  Thus, factor two does not weigh in favor of a stay.

13  **3.    Piecemeal Litigation**

14  "Piecemeal litigation occurs when different tribunals consider the same issue, thereby

15  duplicating efforts and possibly reaching different results."  *Am. Int'l Underwriters, (Philippines),*

16  *Inc. v. Cont'l Ins. Co.,* 843 F.2d 1253, 1258 (9th Cir.1988).  The mere possibility of piecemeal

17  litigation does not constitute the exceptional circumstance required to apply a *Colorado River*

18  stay.  *See Travelers*, 914 F.2d at 1369.  Instead, the case must raise a "special concern about

19  piecemeal litigation," *id.*, which can then be remedied by staying the federal proceeding, s*ee*

20  *Moses H. Cone,* 460 U.S. at 20–21.

21  In *American International Underwriters,* the court determined that by exercising

22  concurrent jurisdiction, the federal court created a high risk of piecemeal litigation.  In that case,

23  the state court proceedings had been ongoing for over two years, and had already decided several

24

25  [11] AlliedBarton lists factors one through six in its Motion to Stay, citing *Nakash v. Marciano,* 882 F.2d 1411, 1416-17 (9th Cir. 1989). (*See* Doc. 15-1, 5.)

26

27  [12]  Throughout the *Colorado River* analysis, the law refers to claims running concurrently through state and federal courts. In this matter, the prior-filed cases include two state-court actions as well as a case filed in the U.S. District Court for the Central District of California ("Central District"). The Central District can hear and preserve the same issues as this Court, assuming proper venue. Throughout this section, the Court considers the matters pending in the state courts as well as in the Central District.

28

1   of the issues that would come before the federal court.  843 F.2d at 1258.  The court determined

2   that exercising jurisdiction over the case and deciding those same issues anew would create a high

3   possibility of inconsistency.  *Id.*

4       While the prior proceedings here are not as advanced as in *American International*

5   *Underwriters,* the court nonetheless finds that this factor weighs in favor of granting a stay on the

6   state law claims.  The *Babeshkov*, *Dynabursky*, and *Navarro* proceedings each commenced prior

7   to this one, and each is further progressed than this case.  The Los Angeles Superior Court stayed

8   *Babeshkov* shortly after its filing in 2008 until June 3, 2011, due to another proceeding in the San

9   Francisco Superior Court (the *Popek* proceeding, Doc. 15-1, p. 4.)  Since the stay was lifted in

10  *Babeshkov*, discovery and case management conferences have been held, and a privacy notice has

11  been sent to the putative class members.  The Central District certified four classes in *Dynabursky*

12  on January 29, 2014.  (Doc. 15, p. 3.)[13]  AlliedBarton reports the *Navarro* parties have agreed to a

13  settlement, which is in the court-approval stage.  (Doc. 15-1, p. 3.)[14]  In contrast, this proceeding is

14  still in its early stages.

15      In light of the further progressed stages of litigation in the other actions, and because the

16  California Labor Code, PAGA, and UCL claims in this case are each similar to claims in at least

17  one of the prior proceedings, piecemeal litigation is a strong possibility if the state law claims are

18  not stayed.  *See Robinson v. Nestle Waters North America, Inc*., 2011 WL 2174375, 3-4 (E.D. Cal.

19  June 1, 2011) (explaining *Ross v. U.S. Bank Nat'l Ass'n,* in which a plaintiff failed to explain why

20  it did not bring federal causes of action into a state court action. 542 F.Supp.2d 1014, 1022 (N.D.

21  Cal. 2008).  The court in *Robinson* found that the two cases with substantially similar causes of

22  action "create[d] the kind of piecemeal litigation that the *Colorado River* doctrine intend[ed] to

23

----

24  [13] In March 2013, the court denied AlliedBarton's motion to stay in *Dynabursky.*

25  [14] The *Navarro* settlement agreement has not been submitted to the Court. Plaintiffs have not been presented with a
    copy, although the parties discussed the benefits of Plaintiffs reviewing the settlement prior to submitting their

26  opposition papers. Plaintiffs were willing to stipulate to continue this hearing for two weeks so long as parties also
    stipulated to a two-week tolling of claims under the Fair Labor Standards Act.  AlliedBarton informed Plaintiffs that

27  they were not agreeable to the tolling. However, AlliedBarton withdrew the Motion and continued the hearing for two
    weeks to provide Plaintiffs a copy of the settlement agreement.  AlliedBarton later informed Plaintiffs the settlement

28  agreement was subject to a confidentiality agreement. To date, Plaintiffs have not received the settlement agreement.
    (Doc. 18, ¶ 6.)

prevent.   Therefore, this factor weighs in favor of staying the current action with respect to the [state] class." *Id.*).  Given the similarity of the claims and the putative classes in the prior case, the same is true here.   This factor, however, is not dispositive on its own and must be balanced with the other factors.

### 4.     The Order in Which Forums Obtained Jurisdiction

When another court has taken jurisdiction of a matter, that court's significant progress on the matter makes it an important consideration in whether a subsequent court exercises jurisdiction.  *See R.R. St. & Co. Inc.*, 656 F.3d at 980 (noting that significant progress of prior action in another court made this factor important in its *Colorado River* analysis).   The Supreme Court has instructed that instead of taking a mechanical approach, courts must apply this factor "in a pragmatic, flexible manner with a view to the realities of the case at hand." *Id.* (citing *Moses H. Cone,* 460 U.S. at 21, giving little weight to the dates of filing when the same relative progress had been made in the state and federal proceedings).

Here, the Los Angeles Superior Court, the Central District of California, and the Stanislaus Superior Court each obtained jurisdiction of the state law claims prior to the filling of this action. As discussed above, each of the other courts has made significant progress on the state law claims, including a pending settlement.  Because of the more advanced progression of these prior suits, this factor weighs in favor of granting a stay of Plaintiffs' state law claims, but not the FLSA claim which has only been brought in this action.

### 5.     Source of Law

California state law governs claims 1 through 4 and 6 through 7 in this action, while federal law governs the FLSA claim.  "'[T]he presence of federal-law issues must always be a major consideration weighing against surrender,' the 'presence of state-law issues may weigh in favor of that surrender' only 'in some rare circumstances.'"  *Travelers*, 914 F.2d at 1370 (citing *Moses H. Cone,* 460 U.S. at 26).  This factor "is more important when it weighs in favor of federal jurisdiction." *R.R. St. & Co.*, 656 F.3d at 981 (citing *Travelers,* 914 F.2d at 1370 and finding when case involves routine issues of state law – misrepresentation, breach of fiduciary duty,

1  breach of contract – which district court was fully capable of deciding, there were no "rare

2  circumstances" warranting a stay).

3        In this case, any complexity will stem from the variety of claims and classes, rather than

4  from applying the substantive law at issue.  Thus, the application of California law does weigh

5  slightly in favor of a stay on the state law claims.

6        **6.      Adequacy of State Court to Protect the Rights of Federal Litigants**

7        "A district court may not stay or dismiss the federal proceeding if the state proceeding

8  cannot adequately protect the rights of the federal litigants.  For example, if there is a possibility

9  that the parties will not be able to raise their claims in the state proceeding, a stay or dismissal is

10  inappropriate." *R.R. St. & Co.*, 656 F.3d at 981) (citing *Moses H. Cone,* 460 U.S. at 26 and

11  emphasizing that the state court might lack the power to enter the order that the plaintiff was

12  seeking in federal court); *Holder v. Holder*, 305 F.3d 854, at 869 n. 5 (9th Cir. 2002) (noting that

13  the state court probably lacked jurisdiction to hear the plaintiff's federal ICARA[15] claim).  This

14  factor "is more important when it weighs in favor of federal jurisdiction."  *R.R. St. & Co*., 656

15  F.3d at 981 (weighing this factor less heavily when state court had clear authority to address rights

16  and remedies in the case).

17        In this case, the rights of AlliedBarton will be preserved in the state courts and in the

18  Central District.  However, neither the state proceedings (*Babeshkev* and *Navarro*) nor the federal

19  proceeding (*Dynabursky*) will protect the rights of the putative FLSA class.  As discussed above,

20  *Babeshkov*, *Dynabursky*, and *Navarro* are each class action suits involving classes comprised *only*

21  of California employees.  (Doc. 15-3, pp. 7, 29, 74.)  Specifically, the classes for the state law

22  claims in the three previously-filed actions include security officers employed by AlliedBarton in

23  California for the four years prior to filing, and the putative class for the same claims in this case

24  includes current and former security officers of Allied Barton within the State of California for the

25  four years prior to September 13, 2013,[16] and the date of filing a motion for class certification.

26

27  [15] International Child Abduction Remedies Act, 42 U.S.C. 11601.

28  [16] The parties entered into a written agreement tolling the statute of limitations for the claims raised in this complaint for sixty days on September 13, 2013. (Doc. 7, ¶ 47.)

(Doc. 7, ¶ 48.)  Even to the extent that AlliedBarton argues a settlement agreement in *Navarro* may include a release of any FLSA claims that class may have, such an agreement would not cover the entire FLSA class in this case because the putative FLSA class here includes potential members from *outside* California.  Thus, while the interests of the putative classes with respect to the California state law claims are clearly protected in the prior proceedings, the interests of the entire putative FLSA class are not adequately safeguarded.

Because none of the prior proceedings will adequately protect the interests of the entire putative FLSA class in this case, and because a stay may harm the putative FLSA class's ability to maintain claims given the statute of limitations issue, this factor does not favor a stay with respect to the FLSA claim.

**7.    Forum Shopping**

"Forum shopping" refers to "[t]he practice of choosing the most favorable jurisdiction or court in which a claim might be heard."  Black's Law Dictionary 726 (9th ed. 2009).  To avoid forum shopping, courts may consider "the vexatious or reactive nature of either the federal or the state litigation."  *R.R. St. & Co.*, 656 F.3d at 981 (citing *Moses H. Cone,* 460 U.S. at 17 n. 20).  As neither party argues that forum shopping is a factor in this case, this factor is neutral.

**8.    Adequacy of State Court to Resolve All the Matters in the Federal Suit**

The final *Colorado River* factor is whether the prior proceedings sufficiently parallel the federal proceeding.  Although "exact parallelism" is not required, the actions must be "substantially similar." *Nakash*, 882 F.2d at 1416.  "The existence of a substantial doubt as to whether the state proceedings will resolve the federal action" precludes a *Colorado River* stay or dismissal.  *Smith v. Cent. Ariz. Water Conservation Dist.*, 418 F.3d 1028, 1033-34 (9th Cir. 2005), (quoting *Intel Corp.,* 12 F.3d at 913).

Here, Plaintiffs allege one federal claim under the FLSA, and six state law claims.  Each of the six state law claims are substantially similar to the claims brought in *Babeshkov*, *Dynabursky*, and *Navarro*.  Like *Babeshkov*, *Dynabursky*, and *Navarro*, all claims arise from AlliedBarton's policies and practices while Plaintiffs worked as its security guards.  Once the three suits are resolved, the parties' abilities to proceed on the six state law claims will be known with certainty.

1  However, none of those cases assert a FLSA claim, and the courts deciding the prior cases will not

2  resolve the FLSA claim.

3      This factor also weighs *against* granting a stay of the FLSA claim, and *for* granting a stay

4  of the state law claims.

5          **9.      Conclusion**

6      Weighing the *Colorado River* factors, there is a clear dichotomy between the state law

7  claims, which have each been brought in prior proceedings and are further progressed than this

8  action, and the FLSA claim unique to this case.  On balance, the *Colorado River* factors tip in

9  favor of staying the state law claims and allowing the FLSA claim to proceed.

10  **D.      Judicial Discretion Weighs in Favor of Staying Only the State Law Claims**

11      A district court has the "power to stay proceedings" as part of its inherent power to

12  "control the disposition of the cases on its docket with economy of time and effort for itself, for

13  counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  In determining

14  whether to stay an action, courts must weigh competing interests that will be affected by the

15  granting or refusal to grant a stay.  *CMAX v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).  These

16  competing interests include: (1) the possible damage which may result from the granting of a stay;

17  (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the

18  orderly course of justice measured in terms of simplifying or complicating of issues, proof, and

19  questions of law which could be expected to result from a stay.  *Id*. (citing *Landis*, 299 U.S. at

20  254-55).

21      "The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520

22  U.S. 681, 708 (1997) (citing *Landis*, 299 U.S. at 255).  "If there is even a fair possibility that the

23  stay . . . will work damage to someone else," the party seeking the stay "must make out a clear

24  case of hardship or inequity." *Landis*, 299 U.S. at 255.

25      Pursuant to these standards, "[a] trial court may, with propriety, find it is more efficient for

26  its own docket and the fairest course for the parties to enter a stay of an action before it, pending

27  resolution of independent proceedings which bear upon the case." *Levya v. Certified Grocers of*

28  *California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979).  "This rule applies whether the separate

proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court."  *Id*. at 863-64.  A district court's decision to grant or deny a *Landis* stay is a matter of discretion.  *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007).

As discussed above, staying all of Plaintiffs' claims as AlliedBarton requests may injure the putative FLSA class members.  "If there is even a fair possibility that the stay . . . will work damage to someone else," the party seeking the stay "must make out a clear case of hardship or inequity."  *Landis*, 299 U.S. at 255.   Because a stay in this matter would potentially prejudice the putative FLSA class members, AlliedBarton must establish a clear case of hardship to warrant a stay.   Here, AlliedBarton has not identified any hardships it would suffer if a stay were not imposed as to the FLSA claim.  (Docs. 15, 15-1, 20.)

A stay of Plaintiffs' state law claims is warranted to promote judicial efficiency. Each of the state law claims shares factual bases and potential class members which make the outcomes of *Babeshkov*, *Dynabursky*, and *Navarro* relevant to this case.  For example, Plaintiffs are both class members of the *Navarro* action, in which parties are currently seeking court approval of a settlement agreement, and which may have preclusive effects on Plaintiffs' ability to assert some of the claims in this action.

In contrast, Plaintiffs' argument that the FLSA claim must progress has merit. The *Babeshkov*, *Dynabursky*, and *Navarro* actions address only California class members' rights and do not address the rights of the collective action class members.  Plaintiffs argue that because of the unique nature of the affirmative opt-in requirement of the FLSA, a stay of that claim will be prejudicial to the putative FLSA class.   Particularly, the FLSA requires class members to affirmatively consent to join the class.   Until such consent is filed with the court to join the litigation, the statute of limitations with respect to each putative class member's claim will continue to accrue.  If the FLSA claim is stayed before these putative FLSA class members are given an opportunity to opt-in to the suit, the statute of limitations will continue to accrue during the course of the stay and these putative class members' claims could become time-barred.

None of the prior actions includes claims for unpaid minimum wages, overtime, or liquidated damages under the FLSA. Thus, even if the other three actions were all resolved, they would not affect the rights of the FLSA collective action members in this case.[17] Staying the FLSA action would not meet the interests of judicial efficiency or protect the rights of the FLSA putative class.

Weighing the factors of the federal first-to-file rule and the *Colorado River* doctrine, as well as the tenets of judicial discretion, staying Plaintiffs' state law claims is warranted, while a stay of the FLSA claim is not warranted.

### IV. CONCLUSION AND ORDER

For all the reasons stated above, the Court HEREBY ORDERS that:

1. AlliedBarton's Requests for Judicial Notice of the documents supporting its Motion to Stay Action are GRANTED;

2. Plaintiffs' Request for Judicial Notice of the document supporting its Opposition to Motion to Stay Action is GRANTED;

3. AlliedBarton's Motion to Stay is GRANTED regarding Plaintiffs' Claim One through Four (1 - 4), Six (6), and Seven (7);

4. AlliedBarton's motion to stay is DENIED as to Plaintiffs' Claim Five (5); and

5. The parties are each ordered to provide status updates to the Court as to the pendency of the prior filed actions every ninety (90) days from the date of this Order.

IT IS SO ORDERED.

Dated: __April 1, 2014__ _____ **/s/ Sheila K. Oberto**
                              UNITED STATES MAGISTRATE JUDGE

---

[17] In addition, those members' claims would be prejudiced if this action were stayed, due to the rules that collective action members must affirmatively consent to join the FLSA class pursuant to 29 U.S.C. § 216.